# EXHIBIT 1

# DEPARTMENT OF THE ARMY
# GROUND LEASE

## FORT BRAGG, FAYETTEVILLE, NORTH CAROLINA
## HARNETT AND CUMBERLAND COUNTIES
## CONTENTS

|  |  | Page |
|---|---|---|
| 1 | TERM | |
| 2 | CONSIDERATION | |
| 3 | NOTICES | |
| 4 | AUTHORIZED REPRESENTATIVES | |
| 5 | SUPERVISION BY THE SECRETARY; RIGHT TO ENTER | |
| 6 | ACCESS BY LESSEE | |
| 7 | APPLICABLE LAWS AND REGULATIONS | |
| 8 | NON-DISCRIMINATION | |
| 9 | TRANSFERS, ASSIGNMENT, OR SUBLEASES | |
| 10 | LIENS AND MORTGAGES | |
| 11 | MUNICIPAL SERVICES | |
| 12 | PROTECTION OF PROJECT | |
| 13 | INSURANCE | |
| 14 | RENTAL AND OCCUPANCY REQUIREMENTS | |
| 15 | RESPONSIBILITY AND INDEMNITY | |
| 16 | RESTORATION | |
| 17 | EASEMENTS AND OTHER ENCUMBRANCES | |
| 17A | THE McKNIGHT CONSTRUCTION SITE | |
| 18 | SUBJECT TO MINERAL INTERESTS | |
| 19 | DEFAULT AND TERMINATION | |
| 20 | PURCHASE OPTION | |
| 21 | PROHIBITED USES AND ALLOWED USES | |
| 22 | NATURAL RESOURCES | |
| 23 | DISPUTES CLAUSE | |
| 24 | CONDITION OF SITE | |
| 25 | ENVIRONMENTAL PROTECTION | |
| 26 | ENVIRONMENTAL BASELINE SURVEY (EBS) | |
| 27 | HISTORIC PRESERVATION | |
| 28 | SOIL AND WATER CONSERVATION | |
| 29 | TAXES | |
| 30 | COVENANT AGAINST CONTINGENT FEES | |
| 31 | MODIFICATIONS | |
| 32 | QUIET ENJOYMENT | |
| 33 | DISCLAIMER | |

i

| | | |
|---|---|---|
| 34 | ANTI-DEFICIENCY ACT | |
| 35 | ADDITIONAL CONVENANTS AND CONDITIONS | |
| 36 | LIST OF EXHIBITS | |

ii

# DEPARTMENT OF THE ARMY
# GROUND LEASE

## FORT BRAGG , FAYETTEVILLE, NORTH CAROLINA
## HARNETT AND CUMBERLAND COUNTIES

CONTENTS, CONTINUED

### EXHIBITS

Exhibit A-1    Survey and Legal Description of Leased Premises
Exhibit A-2    Survey and Legal Description of Nijmegen
Exhibit A-3    Survey of McKnight Construction Site
Exhibit B      Outgrants and Encumbrances
Exhibit C      List of Financing Documents
Exhibit D      Developer Capacity and Experience
Exhibit E      Project Management Procedures and Protocols
Exhibit F      Environmental Baseline Survey
Exhibit G      Programmatic Agreement with State Historic Preservation Officer

# DEPARTMENT OF THE ARMY
# GROUND LEASE

## FORT BRAGG, FAYETTEVILLE, NORTH CAROLINA

## HARNETT AND CUMBERLAND COUNTIES

This **GROUND LEASE** ("Ground Lease"), made as of the 1st day of August, 2003 (the "Effective Date"), by and between THE UNITED STATES OF AMERICA, by THE SECRETARY OF THE ARMY (the "Secretary") and BRAGG COMMUNITIES, LLC, a Delaware limited liability company (the "Lessee"). The Secretary and Lessee may be referred to collectively as the "Parties" and each may be referred to separately as a "Party."

**WITNESSETH:**

The Secretary, by the authority of Title 10, United States Code, Section 2878, for the consideration hereinafter set forth, leases to the Lessee the property identified in Exhibit A-1 and A-2 (the "Site"), subject to the existing encumbrances identified in Exhibit B, specifically excluding those improvements conveyed by deed of 1 August 2003 and all other improvements of whatever nature currently located or constructed in the future on the Site (all buildings, improvements, fixtures and systems being collectively referred to as the "Improvements"; the Site and the Improvements collectively are referred to as the "Project"), for the design, management, rehabilitation, renovation, maintenance of residential communities and related ancillary facilities at Fort Bragg, Fayetteville, North Carolina (the "Installation").

**THIS GROUND LEASE** is granted subject to the following Conditions:

**1.     TERM**

a.     The initial term of this Ground Lease of all lands described in Exhibit A-1 and A-2 is for a period of fifty (50) years, commencing on the Effective Date and expiring July 31, 2053.

Notwithstanding the term of this Ground Lease, at the Secretary's discretion, the Secretary and Lessee will modify the Ground Lease to exclude the property described in Exhibit A-2 and the Lessee will deed the Improvements to the Army (the portion of land to be so excluded from the Ground Lease, together with the Improvements located thereon, being hereinafter referred to as the "Reconveyed Property"). Unless the parties agree to the contrary, the Reconveyed Property shall be released from the Ground Lease and deeded to the Army no later than December 31, 2006.

1

b.    The Secretary may extend this Ground Lease with respect to all lands described in Exhibit A-1 for one (1) additional period of twenty-five (25) years, August 1, 2053 through July 31, 2078 by providing eighteen (18) months advance written notice to the Lessee, provided Lessee accepts the lease extension within ninety (90) days from the date of receipt of written notice. Any lease extension shall be governed by the terms, covenants, and conditions of this Ground Lease and all other project documents as they may exist at the time, including any modifications, supplements and amendments. In the event Lessee fails to accept the lease extension, this Ground Lease shall expire pursuant to Condition 1.a.

## 2.    CONSIDERATION

The consideration provided by the Lessee for the Secretary's execution of the Ground Lease consists of (i) the membership interest in Lessee granted to the Secretary in accordance with the Bragg Communities LLC Operating Agreement and (ii) Lessee's agreement to design, develop, manage, rehabilitate, renovate and maintain the Project at the Installation and in accordance with the terms of this Ground Lease.

## 3.    NOTICES

Any notice, demand, order, direction, determination, requirement, consent or approval, request or other communication with respect to this Ground Lease or with respect to the Project shall be in writing and shall not be effective for any purpose unless given or served by personal delivery to the party or parties to whom such notice, demand, order, direction, determination, requirement, consent or approval, request or other communication is directed or by mailing in duplicate to the party or parties by certified mail, postage prepaid, return receipt requested, or sending the same by telecopy, electronic mail, or other similar form of rapid transmission, addressed as follows:


If to the Lessee:

                    Bragg Communities, LLC
                    c/o Picerne Military Housing
                    75 Lambert Lind Highway
                    Warwick, Rhode Island 02886
                    Attention:  John Picerne

2

With a copy to its
Managing Member:

> Bragg-Picerne Partners, LLC
> c/o Picerne Military Housing
> 75 Lambert Lind Highway
> Warwick, Rhode Island 02886
> Attention: John Picerne

If to the Secretary:

> U.S. Army Corps of Engineers
> Norfolk District
> ATTN: CENAO-TS-R (RCI)
> Fort Norfolk, 803 Front Street
> Norfolk, Virginia 23510-1096

With a copy to:

> Garrison Commander
> Bldg. 1-1326
> ATTN: AFZA-GC
> Fort Bragg, NC 28310

If to the Mortgagee (defined in 10.b.):

> GMAC Commercial Capital Holding Corp.
> 1801 California Street, Suite 3700
> Denver, CO 80202
> Attention: Dan Ray, Senior Vice President

If prior to delivery of Completion Date Certificate:

> GMAC Commercial Mortgage Corporation
> 100 South Wacker Drive, Suite 400
> Chicago, IL 60606
> Attention: Phil Keel

If subsequent to delivery of the Completion Date Certificate:

> GMAC Commercial Mortgage Corporation
> 200 Witmer Road
> Horsham, PA 19044
> Attention: Servicing Executive Vice President

or at such other address or addresses as the Secretary, Lessee, Managing Member, Mortgagee (identified above) or any other Mortgagee (hereinafter defined) may from time to time designate.

3

Every notice, demand, order, direction, determination, requirement, consent or approval, request or communication sent by mail shall be deemed to have been given or served as of the second business day following the date of mailing.

## 4.     AUTHORIZED REPRESENTATIVES

Except as otherwise specifically provided herein, until notice is provided to the contrary, any reference to "Secretary" or "U.S. Army Corps of Engineers" shall include their duly authorized representatives or successors.  The authorized representative of Lessee is its Managing Member.   Any reference to "Lessee" shall include any of its sublessees, assignees, transferees, successors and their duly authorized representatives, except residents of individual housing units.

## 5.     SUPERVISION BY THE SECRETARY; RIGHT TO ENTER

a.     To the extent not otherwise governed by this Ground Lease, the use and occupancy of the Project shall be subject to the general supervision and approval of the Secretary and to such rules and regulations as may be prescribed from time to time by the Secretary. It is anticipated by the Parties that the Secretary  shall continue to maintain and exercise command control over and with respect to (i) the Project, including traffic control, law enforcement and other matters, and (ii) military personnel that may be residing at or otherwise present on the Project from time to time.

b.     The Secretary, its officers, agents and employees, shall have the right to enter upon the Site for any purpose necessary or convenient in connection with the Secretary's purposes, including, without limitation, compliance with environmental, safety, and occupational health laws and regulations, whether or not the Secretary is responsible for enforcing them.  Such inspections are without prejudice to the right of duly constituted enforcement officials to make such inspections. The Secretary may make such inspections as are determined by the Secretary to be necessary and appropriate.  The Secretary will enter the Project only during regular business hours, give Lessee at least twenty-four (24) hours prior notice of entry, and permit a representative of Lessee to be present unless the Secretary determines that emergency entry is required for safety (including fire), environmental, operations, law enforcement or security purposes, or such entry is required as a matter of military necessity.   Lessee shall have no claim on account of any entries against the United States or any officer, agent, employee, or contractor thereof on account of any entry in the ordinary course of business under this Condition 5, except for damages resulting from the negligence or misconduct of the United States or any such officer, agent, employee, or contractor or except where such entry materially impairs or interferes with rights granted to the Lessee hereunder.

4

c.    The Secretary, its officers, agents and employees, shall have the right to enter upon the area shown in Exhibit A-3 hereto and hereinafter known as the "McKnight Construction Site" in order to fulfill its obligations under the existing construction contract with McKnight Construction Company, all as more fully described at Condition 17A.

## 6.    ACCESS BY LESSEE

a.    At all times during the term of this Ground Lease, the Secretary will provide access to the Installation to the Lessee, its constituent members and each of their respective officers, directors, partners, members, employees, Permitted Tenants (hereinafter defined) and other residents of the housing units, contractors and subcontractors, representatives, invitees, permittees, Mortgagees, and agents, which may collectively referred to as the "Lessee Parties." Access shall include vehicular and pedestrian access, including access for residents of the housing units who are not military personnel, among the various parcels comprising the Project, with access to all parcels connecting ultimately to an open and dedicated public way over existing roads.

b.    The Installation Commander of Fort Bragg (the "Installation Commander") may impose vehicle registration and identification restrictions, or other access restrictions and/or identification requirements, on the Lessee Parties and/or any of their visitors that the Installation Commander deems advisable for purposes of security, force protection or military necessity.

c.    The Installation Commander may limit access to the Project at his or her discretion, to the extent as may be required for security, force protection or military necessity provided the Installation Commander shall use his or her best efforts to exercise discretion in a manner which does not unnecessarily interfere with Lessee's rights and obligations under this Ground Lease.

d.    The Installation Commander will allow Lessee access to the existing housing signs on the Installation for the purpose of maintaining housing signs located outside of the Site.

## 7.    APPLICABLE LAWS AND REGULATIONS

a.    At all times during the term of this Ground Lease, the Lessee shall faithfully observe and comply with all applicable Federal, State and local laws, rules, regulations, orders, ordinances, and other governmental standards and requirements at Lessee's sole cost and expense.

b    The Lessee will comply with the Americans with Disabilities Act ("ADA") and the attendant guidelines published by the Architectural and Transportation Barriers Compliance Board.

5

8.   **NON-DISCRIMINATION**

The Lessee shall not discriminate against any person or persons, or exclude them from participation in the Lessee's operations, programs or activities conducted on the Project because of race, color, gender, religion, sex, age, handicap or national origin.

9.   **TRANSFERS, ASSIGNMENT, OR SUBLEASES**

a.   BY THE LESSEE

(1)   The Lessee shall neither transfer nor assign this Ground Lease nor sublet any part of the Project (other than rental of dwellings to Permitted Tenants as defined in Condition 14 and Mortgages permitted under Condition 10), nor grant any interest, privilege, or license whatsoever in connection with this Ground Lease without prior written approval of the Secretary.

(2)   Any assignment granted by the Lessee shall be subject to and consistent with all of the terms and conditions of this Ground Lease, including, without limitation, the environmental protection provisions set forth in Condition 25. Any successor shall be deemed to have assumed all of the obligations of the Lessee under this Ground Lease and all other documents and agreements incorporated into this Ground Lease, and the Lessee shall be released from all obligations under this Ground Lease and all other documents and agreements incorporated into this Ground Lease from and after the date of the assignment.

(3)   Any sublease or grant of any interest, privilege, or license by the Lessee must expressly be subject to all of the terms and conditions of this Ground Lease, including, without limitation, the environmental protection provisions set forth in Condition 25; and shall not relieve Lessee of any of its obligations.

(4)   In case of any conflict between any provisions of this Ground Lease and any provisions of any agreement permitted under this Condition 9, this Ground Lease will control.  A copy of this Ground Lease and all current documents and agreements that are incorporated into this Ground Lease must be attached to all agreements permitted under this Condition 9 (other than leases to Permitted Tenants).

(5)   The Secretary shall not be obligated to recognize any right of any person or entity to an interest in this Ground Lease or to own or operate any facilities and/or Improvements or conduct any other activity or activities on the Project authorized under the Ground Lease acquired in violation of this Condition 9.

b.    BY THE SECRETARY

(1)    In the event that the Secretary shall assign or transfer this Ground Lease, or convey title to any portion of the Site, this Ground Lease shall remain in effect with respect to any portion of the Site in the hands of a successor, provided however, any successor owner shall not succeed to the Secretary's rights under Conditions 5.a., 6b, 6c, 14, 22, 23 and 25 and shall not succeed to the rights of any other agency of the United States.

(2)    In case of Installation closure, if the Managing Member, shall notify the Secretary within ninety (90) days after receipt of formal notification under Base Realignment and Closure procedures in effect at the time that the Installation will be closed (the "Closure Notice") that the Purchase Option (hereinafter defined at Condition 20) is not to be exercised pursuant to that certain Purchase Option Agreement of even date herewith ("Purchase Option Agreement"), this Ground Lease shall remain in full force and effect.  If the Managing Member, shall give timely notice to the Secretary pursuant to the Purchase Option of its election exercise the Purchase Option as provided therein, this Ground Lease shall remain in full force and effect following the acquisition of the Site pursuant to said Purchase Option, unless the Managing Member shall elect to terminate this Ground Lease and furnish the Secretary with thirty (30) days' written notice of such termination, in which event this Ground Lease shall terminate at the end of such 30-day period.

## 10.    LIENS AND MORTGAGES

a.    <u>No Liens or Mortgages Except as Expressly Permitted</u>.  Except as provided in this Condition 10, neither the Secretary nor the Lessee shall engage in any financing or other transaction creating or permitting the creation of any mortgage upon the Project, place or cause to be placed upon the Project any lien or other encumbrance other than encumbrances required in accordance with the Ground Lease or permitted under Exhibit C, or suffer any levy or attachment to be made on its interest in the Project, other than such levy or attachment as may result from a foreclosure of a mortgage that is consistent with this Condition 10.  Any such unpermitted mortgage, encumbrance, or lien shall be deemed to be a violation of this covenant on the date of its execution or filing of record regardless of whether or when it is foreclosed or otherwise enforced, and is void in its inception.

b.    <u>Permitted Mortgages</u>.  During the term of this Ground Lease, the Lessee may from time to time, with consent from the Secretary, encumber its interest in the Project (including Improvements, personal property, rents, revenues, and insurance proceeds), including this Ground Lease and all documents executed in connection herewith, by way of one or more loans or other financing secured by a mortgage, deed of trust, loan document, assignment for collateral purposes or other security interest (collectively, together with all renewals, modifications, replacements and refinancings, a "<u>Mortgage</u>"), which Mortgage shall be subject to the terms of this

7

Condition 10. The holder of any Mortgage, including the lender identified in Condition 3, shall be referred to as a "<u>Mortgagee</u>." Any instrument evidencing, securing, guaranteeing, insuring or providing credit enhancement for a loan secured by a Mortgage shall be a "<u>Financing Document</u>." The Secretary agrees to execute an estoppel certificate or any other similar documentation, as may reasonably be required by the Mortgagee from time to time, to consent to the Mortgage, to acknowledge the rights of the Mortgagee under this Condition 10, and to certify the status of this Ground Lease and the performance of the Secretary and the Lessee as of the date of such certification. The Secretary agrees to execute documents and/or take actions as Lessee or Mortgagee may reasonably request from time to time in order to evidence, perfect and protect Mortgagee's lien and security interest, including, without limitation, execution and filing of financing statements and obtaining the appropriate acknowledgement from the applicable Secretary official. Notwithstanding any foreclosure or other enforcement of the Mortgage or conveyance, Lessee shall remain liable for the performance of all the terms, covenants, and conditions of this Ground Lease that are to be carried out and performed by the Lessee. Set forth at <u>Exhibit C</u> hereto is a schedule of the Financing Documents to be executed upon the initial financing of the Project. Without limitation to the foregoing, the Secretary hereby consents to each of the "Loan Documents" as defined in the Loan Agreement dated as of August 1, 2003, between the Lessee and GMAC Commercial Holding Capital Corp., agrees that each such "Loan Document" constitutes a Financing Document and acknowledges GMAC Commercial Holding Capital Corp. and its assignees of any interest under such "Loan Documents" as a Mortgagee.

c.      <u>No Encumbrance of Secretary's Interests</u>. No Mortgage shall extend to or affect the fee title in the Project or the right of the Secretary to acquire the Improvements upon expiration or termination of this Ground Lease. No Mortgage shall be binding upon the Secretary in the enforcement of its rights and remedies under this Ground Lease and by law unless and until a copy of the Mortgage is delivered to the Secretary.

d.      <u>Notice to Secretary</u>. The Lessee shall furnish the Secretary notice of the name and address of each Mortgagee, servicer, agent or trustee of a Mortgage (excluding parties holding participation interests in the Mortgage). Further, the Lessee shall notify the Secretary promptly of any lien or encumbrance that has been created or attached to the Lessee's interest in the Project, whether by act of the Lessee or otherwise, of which the Lessee has actual notice.

e.      <u>Nondisturbance</u>. If a Mortgagee, or purchaser at foreclosure of the Mortgage, or transferee or assignee, acquires Lessee's interest in the Project by virtue of the default by Lessee under the Mortgage or otherwise, this Ground Lease shall automatically continue in full force and effect so long as the Mortgagee, purchaser at foreclosure, transferee or assignee is, with respect to any existing Default, taking the actions required under Conditions 10.f. and g. to preserve the rights of the Mortgagee, purchaser at foreclosure, transferee or assignee under this

8

Ground Lease. Neither the Mortgagee, purchaser at foreclosure, transferee or assignee, nor their agent or nominee, may operate, develop or manage any portion of the Project without obtaining the prior written approval of the Secretary. Such approval shall not be unreasonably withheld so long as the Mortgagee, purchaser at foreclosure, transferee or assignee, or their agent or nominee has the capacity and experience listed on Exhibit D. For the period of time during which the Mortgagee, purchaser at foreclosure, transferee or assignee holds Lessee's interest in the Project, that Party shall become liable and fully bound by the provisions of this Ground Lease for only those obligations arising during the period of that Party's ownership. The Secretary agrees to execute and deliver to the Mortgagee a nondisturbance agreement consistent with the terms of this Condition 10.

f.    Rights of Mortgagees. If a Mortgagee, or a servicer, agent or trustee of a Mortgagee, provides written notice to the Secretary of its lien on the Project and its name and address, the Secretary agrees that so long as the Mortgage shall remain unsatisfied of record, or until written notice of satisfaction is provided by the Mortgagee to the Secretary, the following provisions shall apply:

(1)    There shall be no cancellation, surrender, alteration, amendment or modification of this Ground Lease by Lessee or by joint action of the Secretary and Lessee without the prior consent in writing of the Mortgagee, which shall not be unreasonably withheld, nor shall any merger result from the acquisition by, or devolution upon, any one entity of the fee and leasehold estates in the Project.

(2)    The name of the Mortgagee may be added to the "Loss Payable Endorsement" of any and all insurance policies required to be carried by Lessee provided that the insurance proceeds are to be applied or paid in the manner specified in the Mortgage.

(3)    Mortgagee shall be entitled to participate in any settlement regarding insurance or condemnation proceeds with respect to any claim in excess of $25,000 in value and to supervise and assure the receipt and application of proceeds in accordance with the Mortgage. Neither the Secretary nor Lessee shall be entitled to cancel this Ground Lease by reason of any damage or destruction without the prior written consent of Mortgagee.

g.    Multiple Mortgagees. If more than one Mortgagee seeks to exercise any of the rights provided for in this Condition 10 in an inconsistent manner, the Mortgagee having priority of lien over the other Mortgagee(s) shall be entitled, as against the others, to exercise its rights. Should a dispute arise among Mortgagees regarding the priority of the lien, the Mortgagees shall be required to demonstrate to the Secretary which Mortgagee has priority of lien as a condition to exercising any rights.

h.    No Merger. The fee title to the Site and the leasehold interest of Lessee in the Project shall not merge as long as any Mortgage is outstanding, but instead

9

shall at all times remain separate and distinct, notwithstanding the union of any interests of the Secretary or any other entity.

i.     Reliance; Successors and Assigns.  Each Mortgagee, and its successors and assigns, shall be entitled to rely on the provisions of this Condition 10 and to enforce any provisions against the Secretary.

## 11.    MUNICIPAL SERVICES

Pursuant to that certain Municipal Services and Utility Support Agreement, by and between the Army and the Partnership, dated as of the Effective Date, the Lessee shall pay the cost of producing and/or supplying any utilities and other municipal services (all such terms being described and/or defined in said Agreement) furnished by the Secretary or through government-owned facilities.  Non-compliance with the Municipal Services Agreement shall constitute a Default under this Lease.  Unless otherwise specifically provided in the Municipal Services Agreement, the Lessee may make its own arrangements for new or additional utility systems and services provided or distributed by private parties on the Installation and the Secretary will cooperate with Lessee's reasonable requests for the grant of access easements to Lessee's utility providers.

During the term of this Ground Lease, the Secretary shall provide municipal services or provide a reasonable grant of access to municipal service providers.

## 12.    PROTECTION OF PROJECT

a.     The Lessee shall keep the Project in good order and in a decent, safe, and sanitary condition by and at the sole expense of the Lessee and pursuant to this Ground Lease and Exhibit E.

b.     The Lessee has the right to demolish, construct, or renovate structures, and other Improvements on the Project in accordance with this Ground Lease.  The demolition, renovation and construction of the Improvements is a private undertaking and title to the Improvements constructed by Lessee shall vest in Lessee.  Subject to the terms of this Ground Lease, the Lessee shall be entitled to install such of its own machinery and equipment to make improvements and to attach such fixtures in or upon the Project as may be necessary for its use of the Project pursuant to this Ground Lease, and to remove such machinery, equipment, improvements and fixtures at any time prior to the expiration or earlier termination of this Ground Lease, if consistent therewith.

c.     The Secretary will maintain, repair and replace (or cause to be maintained, repaired or replaced) ingress and egress to the Project and between noncontiguous portions of the Project, and keep them in good order to the same level as the maintenance performed to the remainder of the Installation.

10

13. **INSURANCE**

a.      Lessee shall maintain or cause to be maintained the insurance coverages listed in this Condition plus any others required by the Mortgagee.  This requirement includes, but is not limited to, replacement cost coverage insurance, renters' insurance, environmental insurance, general liability insurance, and [any other insurance such as flood insurance] with coverage in amounts never less than is commercially reasonable.  Rating of the insurer shall be acceptable to the Secretary.

b.      Each policy shall provide that

> (1)      Any losses shall be payable notwithstanding any act or failure to act or negligence of the Lessee or the Secretary or any other person.

> (2)      No cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt of notice of such cancellation, etc., by the Secretary.

> (3)      The Lessee shall defend (pay all legal costs) and indemnify (pay all settlements or judgments) for activities of the Lessee pursuant to its obligations under this Ground Lease.

> (4)      The insurer shall have no right of subrogation against the Secretary.

> (5)      The policy shall be reasonably satisfactory to the Secretary in all respects.

> (6)       Any deductible or self-insured retention shall be declared to the Secretary.

Notwithstanding the foregoing, the Lessee understands and agrees that cancellation of any insurance coverage required to be carried and maintained by the Lessee under this Condition will constitute a failure to comply with the terms of this Ground Lease, and the remedies for Default and breach pursuant to Condition 19 shall apply.

c.      The Lessee shall carry general liability insurance on an "occurrence basis" against all claims for "personal injury," including without limitation, bodily injury, death or property damage, occurring upon, in or about the land, including any buildings and adjoining sidewalks, streets, and passageways.  Insurance coverage must afford immediate minimum protection at all times during the term of this Ground Lease, with limits of liability in amounts approved from time to time by the Secretary, but not less than $ 35,000,000 in the event of bodily injury and death to any one or more persons in one accident, and not less than $ 35,000,000 for

11

property damage. Insurance coverage shall also include coverage against liability for bodily injury or property damage arising out of the acts or omissions by or on behalf of any person or organization, or involving any owned, non-owned, leased or hired automotive equipment in connection with the Lessee's activities. The insurance carried and maintained by the Lessee pursuant to this Condition 13 shall provide coverage to protect the Secretary from any damage or liability for which the Lessee is liable or responsible or agrees to hold harmless and indemnify the Secretary under this Ground Lease. Proceeds under all policies of insurance carried and maintained to provide coverage required in this Condition 13 shall be applied in accordance with the Mortgage.

d.    In the event any item or part of the Project shall be damaged (except de minimis damage) or destroyed, Lessee shall promptly provide notice to the Secretary. Subject to the requirements of the Financing Documents, and except as waived by the Secretary, Lessee shall restore or replace the damaged or destroyed property as soon as practicable, to the extent insurance proceeds are available. All applicable insurance proceeds relative to the damaged or destroyed property shall be applied (subject to any provisions of the Financing Documents) first to removing debris from and restoring the damaged area to a reasonably clean and safe condition. Any remaining balance of the proceeds may be retained by Lessee, subject to Conditions 15 and 16 of this Ground Lease.

e.    The Lessee shall provide renters insurance coverage for the benefit of Military Tenants that is comparable to renters insurance coverage provided by other privatized military residential communities.

f.    The Lessee shall deliver or cause to be delivered upon execution of this Ground Lease (and not less than fifteen (15) days prior to the expiration date of each policy furnished pursuant to this Condition 13) a certificate of insurance evidencing the insurance required. The Lessee upon request from the Secretary, shall deliver a certified copy of each policy of insurance required by this Ground Lease to the Secretary as soon as such policy is made available by the insurer.

g.    The Lessee shall maintain workers' compensation insurance in accordance with State law. This insurance must be valid for the entire lease period. Neither the Lessee nor its employees are employees of the United States.

## 14.    RENTAL AND OCCUPANCY REQUIREMENTS

a.    The Project shall be operated as a residential rental development for Permitted Tenants. Specifically, the Project shall be managed and maintained in accordance with the procedures and protocols set forth in Condition 12 and Exhibit E, and the failure of the Lessee to manage the Project in accordance with the level of service shall be a Default, subject to all applicable rights in this Ground Lease.

12

b.    Lessee will offer the Project's dwelling units for rent consistent with the following priorities:

## PRIORITY SEQUENCE FOR PERMITTED TENANTS

| CATEGORY | PRIORITY |
|---|---|
| Accompanied military personnel assigned or attached for duty at the Installation | 1 |
| Accompanied military personnel assigned or attached for duty at other military installations within a 50 mile radius of the Installation | 2 |
| Unaccompanied family members of military personnel | 3 |
| Unaccompanied military personnel (married and single) assigned or attached for duty as stated in (1) above | 4 |
| Accompanied retired military personnel and spouses or widowed spouses of retired military personnel | 5 |
| Accompanied DoD and Federal Agency civilians (other than designated Key & Essential) | 6 |
| Non-military or non-DoD or non-Federal Agency personnel (general public) | 7 |

Residential rental units will not be rented to prospective tenants with lower priority in the above list, if higher priority tenants are available to rent the units, unless the Secretary approves an exception.  Active duty military tenants will be charged rents that do not exceed the applicable Basic Allowance for Housing ("BAH") for U.S. military service personnel.  Foreign military will be charged equivalent rates.  As used in this clause, the term "rent" includes payment for utilities.  If two (2) or more military service personnel live in one unit, the rent for such unit shall not exceed the "with dependents" BAH for the senior or higher ranking military member occupying such unit.  Personnel identified in priority categories 1 through 4 above that do not receive BAH will pay rent based on the "with dependents" BAH for the highest grade of BAH attributable to the unit based upon the then-applicable Unit Designation Schedule.  Tenants in priority categories below 4 shall pay rents as determined by Lessee.

## 15.    RESPONSIBILITY AND INDEMNITY

a.    The Lessee shall be responsible for any damage that may be caused to the Project or to property of the Secretary by the activities of the Lessee under this Ground Lease and shall exercise due care in the protection of all property located on the Site against fire or damage from any and all other causes.  Except as otherwise provided in the Ground Lease, any property of the Secretary damaged or destroyed by the Lessee incident to the exercise of the privileges granted by this Ground Lease shall, to the extent reasonably practicable, be promptly repaired or replaced by the Lessee to the condition existing immediately prior to damage or

13

destruction, or at the election of the Secretary, the Lessee shall reimburse the Secretary in an amount reasonably necessary to restore or replace the property.

b.      The Lessee agrees to indemnify, defend, save, and hold harmless the Secretary, its officers, agents and employees from and against all suits, claims, demands or actions, liabilities, judgments, including actual costs and attorney's fees arising out of, claimed on account of or in any manner predicated upon personal injury, death or Project damage resulting from, related to, caused by or arising out of Lessee's possession or use of the Project or any activities conducted or services furnished by Lessee in connection with or pursuant to this Ground Lease, and all claims for damages by Lessee's tenants against the Secretary arising out of or related to their tenancy, except as otherwise expressly agreed.

## 16.    RESTORATION

On or before the expiration or termination date of this Ground Lease, the Lessee shall surrender and convey all of the Improvements located on the Site, in the condition required by Exhibit E, to the Secretary, without compensation. In such event, the Lessee shall quitclaim to the Secretary all of the Lessee's right, title and interest in and to the Improvements, subject only to Exhibit B, any rights granted the Lessee, all future outgrants granted by the Secretary, and any other liens or encumbrances expressly agreed to by (or arising by, through or under) the Secretary. On or before the expiration date of this Ground Lease, the Lessee shall deliver a bill of sale to the Army, without payment, for all of the Lessee's right, title, and interest in and to the related personal property and software. The Lessee grants the Secretary power of attorney to execute any quitclaim deed or other documents to clear title to the Improvements and related personal property.

## 17.    EASEMENTS AND OTHER ENCUMBRANCES

a.      This Ground Lease is subject to all existing outgrants, which are listed on Exhibit B, to easements, permits, or licenses subsequently granted, and to established access routes for roadways and utilities located, or to be located, on the premises. The grant of any new easement, permit, license or route will be coordinated with the Lessee, and such uses will not be granted which will materially interfere with any present or proposed use by the Lessee. The Lessee will not close any established access routes without written permission of the Secretary.

b.      At the request of the Lessee, the Secretary will grant outgrants over the Site and other areas of the Installation if reasonably required for the proper development or operation of the Project and if they do not interfere with the operation of the Installation. In the event that the Secretary shall deny the granting of an outgrant requested by the Lessee, the Secretary shall use its best efforts to identify alternative means to provide the access, service or other use that the requested outgrant was intended to provide.

14

c.    The Lessee is responsible to obtain any easements or rights-of-way over areas that are not owned or controlled by the Secretary at the Lessee's sole cost and expense.

## 17A.  THE McKNIGHT CONSTRUCTION SITE

a.    The Secretary acknowledges and agrees that Lessee has accepted the demise of that portion of the Site identified at Exhibit A-3, the McKnight Construction Site, as an accommodation to the Secretary pending completion of the construction of 162 residential units (the "Cherbourg Units") by the McKnight Construction Company ("McKnight"), pursuant to a contract between McKnight and the Secretary identified as Contract # DACA21-02-C-0002 (the "McKnight Construction Contract"). The Secretary agrees that the Cherbourg Units and any and all Improvements located on the McKnight Construction Site will not be conveyed to Lessee except as provided in this Condition 17A, and until such conveyance, will be the property of the Secretary.

b.    The Parties agree that Lessee shall have no responsibility for or liability arising out of any of the activities of McKnight with respect to the Cherbourg Units or on any portion of the Site.  To this end, the Secretary agrees (i) to require that McKnight carry general liability insurance (covering any and all actions of its personnel and of any agents and contractors anywhere on the Site) and environmental insurance, and (ii) to assure that the lessee is identified as the beneficiary on all such insurance policies, additional insured and/or loss payee. The Secretary agrees, further, that to the extent the activities of McKnight are responsible for liability, costs, or losses to Lessee of any nature whatsoever, which liability, etc. is not fully compensated by insurance or other sources of funds, to modify the development program for the Project and/or in the allocation of benefits under the LLC Operating Agreement of the Lessee as may be necessary to fully offset or compensate for such liability, costs and/or losses.

c.    Upon the completion of construction of any group of at least 35 Cherbourg Units and upon their acceptance by the Secretary pursuant to the McKnight Construction Contract, Lessee will accept conveyance of such group of Cherbourg Units, together with all related Improvements.  Lessee shall have the right to inspect any such units prior to their acceptance by Lessee.  The Secretary agrees to enforce and exercise any warranties and remedies with respect to conveyed Cherbourg Units.  If all Cherbourg Units have not been completed and conveyed to Lessee by August 20, 2004, the Secretary will agree to such modifications in the development program for the Project as may be appropriate in order to compensate for the delayed delivery of such units.

d.    Lessee agrees to allow McKnight reasonable access to such portions of the Site, and to utilities, roads, etc., as may be necessary to enable it to complete construction of the Cherbourg Units pursuant to the terms of the McKnight Construction Contract.

## 18.  SUBJECT TO MINERAL INTERESTS

This Ground Lease is subject to all outstanding mineral interests.  Federally owned mineral interests may be included in present or future mineral leases issued by the Bureau of Land Management ("BLM"), which has responsibility for mineral development on federal lands.  The Secretary agrees that surface use will not be made available to BLM, except as agreed by Lessee, and, in consultation with the Lessee, the Secretary shall make recommendations to be included by BLM in future mineral leases to protect the Project from activities that would interfere with the Lessee's operations or would be contrary to local law including, without limitation, stipulations that prohibit or significantly restrict the Lessee's rights to surface access to the Site.

## 19.  DEFAULT AND TERMINATION

a.     The failure to comply with any provision of this Ground Lease by a Party shall constitute a default and breach of this Ground Lease (a "Default").

b.     The Lessee shall be in Default if the Lessee:  (i) seeks an order for relief or initiates any proceedings of any nature under any laws of the United States or any state seeking relief as debtor; (ii) applies for a receiver, trustee, custodian or like officer appointed for all or substantially all of its business or assets on the ground of insolvency; (iii) institutes a proceeding under any bankruptcy or insolvency law of the United States or any state; (iv) makes a general assignment for the benefit of its creditors; (v) permits the attachment or sequestration of any of the Project and/or assets that is not promptly discharged or bonded; (vi) admits in writing the inability to pay its debts generally as they become due; (vii) shall be terminated or dissolved without being reconstituted or reincorporated within sixty (60) days; or (viii) shall be an adjudicated bankrupt or insolvent or a petition for reorganization shall be granted.

c.     If the Lessee is in default, the Secretary shall send a notice of Default to both the Lessee and the Mortgagee.  No notice of Default by the Secretary shall be effective unless sent to both the Mortgagee and the Lessee.

d.     If the Secretary is in default, the Lessee shall send a notice of Default to the Secretary.

e.     The non-defaulting Party may exercise self-help in addition to any other remedies available to it under this Ground Lease with respect to the type of Default, if the Default (other than Defaults described in Condition 19.b.) is not cured within ninety (90) days after delivery of notice of Default to the defaulting Party.  If the time required to cure the Default exceeds the ninety (90) day period, the non-defaulting Party may not initiate any remedy if the defaulting party commences the actions necessary to cure the Default within the ninety (90) day period and shall diligently

16

DACA65-1-03-16

pursue curing the Default. In the event any Party is unable to comply with any term of this Ground Lease due to strike, a delay caused by the other Party, act of God, casualty, inability to obtain materials or other events outside the control of the Party (a "Force Majeure Event"), the cure period shall be extended one day for each day during which the Force Majeure Event exists. If a non-defaulting Party exercises its right of self-help, the defaulting Party shall be liable for all reasonable costs and expenses incurred by the non-defaulting Party in connection with taking curative action.

f.      Subject to Condition 19(k) and (l), the Mortgagee shall have the right, but not the obligation, until 90 days after the expiration of the period afforded Lessee to cure any Default under this Lease to remedy or cause to be remedied any Default by Lessee under this Ground Lease, and the Secretary shall accept performance by the Mortgagee as if Lessee had performed.

g.      If a Party defaults, but the Default does not constitute a Termination Default (as defined below), then the non-defaulting Party may seek damages, any other remedy available under law, or specific performance, but may not terminate this Ground Lease.

h.      No remedy may be sought during any period of time during which the Parties are attempting to resolve a dispute pursuant to Condition 23 with respect to the actions or inaction that are the subject of the alleged Default.

i.      (1)      Subject to Condition 19i, either Party may terminate this Ground Lease as to all or any part of the Project (as provided in paragraph 3 of this Condition 19.i) in the event of a Default by the other Party that: (a) has not been cured prior to the expiration of the cure period provided for in Condition 19.a., and (b) constitutes fraud or results in material adverse impact on the other party that has not been cured by the payment of money or the remedy of specific performance ("Termination Default"). The termination shall be effective as of a day specified in a notice of termination ("Notice of Termination for Default") to the defaulting Party, which shall be at least fifteen (15), but not more than thirty (30) days after its receipt by the defaulting Party. If a Party is in termination default, the nondefaluting party shall send a notice of Termination Default to both the defaulting party and the Mortgagee.

        (2)      If the Secretary terminates this Ground Lease pursuant to Condition 19.i, the Lessee shall surrender and convey all of the Improvements located on the Project to the Secretary without compensation. If the Lessee terminates this Ground Lease pursuant to Condition 19.i, the Lessee will be entitled to pursue any available legal remedy.

        (3)      In the event that a Termination Default by either party shall affect only a portion of the Project and the remainder of the Project remains physically and financially viable for the purposes for which this Ground Lease was executed, the

Case 5:20-cv-00336-D   Document 34-1   Filed 10/30/20   Page 21 of 36

parties agree (a) to continue to operate the remainder of the Project in accordance with the requirements of this Ground Lease, (b) to modify the obligations of the parties pursuant to this Ground Lease in a manner appropriate to the loss of the applicable portion of the Project, and (c) that remedies or damages shall be based upon the portion of the Project with respect to which the Termination Default occurred; provided, however, that in all such cases, the consent of the Mortgagee shall be obtained to such continued operation if the effect of the modification in the Project would be to cause default under the financing documents.

j.      Intentionally omitted.

k.      No Default shall be deemed to exist as long as the Mortgagee, in good faith (but subject to any stay resulting from a bankruptcy of or affecting Lessee), (i) has cured, or commenced to cure a Default within the applicable time period described in Condition 19f and shall continuously prosecute or cause to be prosecuted the same to completion with reasonable diligence and continuity, or (ii) if possession of any part of the Project is required in order to cure the Default, shall notify the Secretary of its intention to institute foreclosure proceedings to obtain possession directly or through a receiver within the time period required to commence curing the Default, and within ninety (90) days after the giving notice, commence the foreclosure proceedings and prosecute proceedings with reasonable diligence and continuity and, upon obtaining possession, commence promptly to cure the Default with reasonable diligence and continuity.

l.      Notwithstanding any provision of this Ground Lease to the contrary, the Mortgagee shall not be required to cure any Personal Default of Lessee in order to preserve Mortgagee's rights and the Secretary as to Mortgagee shall waive the Personal Default. A Personal Default is a Default that (i) cannot be cured by the payment of money or performance of maintenance, repair, or construction work by Mortgagee or (ii) is otherwise not susceptible to cure by Mortgagee.

m.      In the event this Ground Lease is terminated as to Lessee as the result of a Default, or if the fee title and leasehold interest of Lessee shall merge, at Mortgagee's election, the Secretary shall execute a replacement ground lease (effective immediately prior to such termination or merger) with Mortgagee (or its permitted agent or nominee under Condition 10.e.) on the same terms and conditions as this Ground Lease for the remaining term of this Ground Lease or until termination of Mortgagee's interest, whichever occurs first, provided that the Mortgagee shall have cured or provided for the payment of the cost of curing all existing Defaults of which Mortgagee has been given notice (other than Personal Defaults) within the time and the manner provided in Conditions 19f and k. In the event that federal or other applicable law shall prohibit the execution of a new ground lease, the Secretary shall take other appropriate action as shall be legally permissible under federal or other applicable law, such as recognizing Mortgagee as a substitute lessee or otherwise suspending termination of this Ground Lease, to

18

prevent the loss of Mortgagee's rights in this Ground Lease by virtue of Personal Default or other Default or other reason.

n.     No Default shall be deemed to have occurred under this Ground Lease that arises out of the acts or omissions of a Permitted Tenant or other sublessee of one or more of the Improvements so long as the Lessee is utilizing commercially reasonable efforts to rectify any breach of which it becomes aware including, without limitation, referring the matter to the Secretary for action in appropriate circumstances.

## 20.     PURCHASE OPTION

In the event that the Installation is subject to base closure occurring under such authority as the Secretary may be entitled to exercise from time to time, the Secretary shall provide the appropriate Closure Notice to the Lessee and Managing Member and shall offer the option to purchase the Site or any portion thereof (the "Purchase Option") pursuant to the terms set forth in the Purchase Option Agreement of even date herewith.  In the event the Purchase Option is not exercised in accordance with the Purchase Option Agreement, as to any portion of the Project, unless the Secretary is notified in writing by Lessee and all mortagees to the contrary, this Lease shall remain in full force and effect against any and all successor owners of such portion of the Project (each a "Successor Owner"), subject to the Secretary shall provide and require each Successor Owner to provide all necessary easements, rights-of-way and access rights, including requirements as to dedication and/or maintenance of roads, which are reasonably required (A) to permit tenants and employees of Lessee access to the Project, (B) to permit the supply of utilities and all necessary services to the Project, or (C) otherwise to permit the Project to function as a first class residential rental Project.

## 21.     PROHIBITED USES AND ALLOWED USES

a.     The Lessee may use the Project for the design, development, management, rehabilitation, renovation, and maintenance of family housing units and related ancillary facilities, and any other use approved by the Secretary.  The Lessee shall not use the Project for other purpose without the consent of the Secretary.  In granting approval for a change of use, the Secretary may impose additional environmental protection provisions as it deems appropriate.

b.     The Lessee shall not:
(i) permit unlicensed gambling on the Project;
(ii) install or operate, or permit to be installed or operated, any device which is illegal;
(iii) use or permit the Project to be used for any illegal business or purpose;
(iv) allow activities that would constitute a nuisance; or
(v) sell, or commercially store or dispense, or permit the sale, or commercial storage or dispensing of beer or other intoxicating liquors on the Project, without the permission of the Secretary.

19

c.    All leases or other occupancy agreements to be entered into with Residents shall specifically prohibit the activities of Condition 21b.

d.    As an exception to the restrictions in this Condition, some games of chance, such as raffles, games and sporting events, may be conducted by non-profit organizations or other approved Installation organizations if permissible under state and local laws and if approved in writing by the Installation Commander.

e.    The Lessee shall not construct or place any structure, improvement or advertising sign or allow or permit such construction or placement without the prior approval of the Secretary.  The Secretary shall be deemed to have approved (i) the construction and placement of all structures and other Improvements constituting the Project, as provided for in the various documents executed by the Parties or any of them with respect thereto, and (ii) the placement of signage reasonable and appropriate to the operation of the Project as housing for Permitted Tenants. Except for any communications infrastructure, which requires the written consent of the Deputy Assistant Secretary of the Army for Privatization and Partnerships, Office of the Assistant Secretary (I&E), alterations, additions and improvements agreed to by the Secretary in its capacity as a Member of the Lessee shall satisfy this Condition.

f.    The Secretary must approve Lessee-proposed additions, alterations, or improvements to the Project that require an environmental analysis under applicable federal or state law.  At Lessee's sole expense, prior to approval by the Secretary of Lessee-proposed additions, alterations or improvements to the Project, the Lessee shall furnish any environmental analysis and documentation deemed reasonably necessary by the Secretary to comply with the National Environmental Policy Act of 1969 and other applicable environmental laws and regulations.

g.    The Lessee shall cooperate, at no material expense to the Lessee, with the Secretary's efforts to comply with NEPA and other applicable laws and regulations that are not necessitated by Lessee-proposed additions, alterations or improvements to the Project proposed by the Lessee.

## 22.    NATURAL RESOURCES

The Lessee shall cut no timber, conduct no mining operations, remove no sand, gravel, or kindred substances from the ground, commit no waste of any kind, nor in any manner substantially change the contour or condition of the Site, except (i) for the purposes of constructing the Project or (ii)  as otherwise provided in this Ground Lease or as authorized in writing by the Secretary.  The Lessee may salvage fallen or dead timber provided Lessee does not make commercial use of the timber. Except for timber salvaged by the Lessee when in the way of construction of improvements or other facilities, all sales of forest products will be conducted by the United States and the proceeds shall not be available to the Lessee under the provisions of this Ground Lease.

20

23   **DISPUTES CLAUSE**

a.     Except as provided in the Contract Disputes Act of 1978 (41 U.S.C. 601-613) ("the Act"), all disputes arising under or related to this Ground Lease shall be resolved under this Condition 23 and the provisions of the Act.  However, if the parties mutually agree, they can concurrently pursue Alternative Dispute Resolution.

b.     A claim by the Lessee shall be made in writing and submitted to the District Engineer, Norfolk District, US Army Corps of Engineers ("District Engineer") for a written decision.  A claim by the Government against the Lessee shall be subject to a decision by the District Engineer.

c.     The Lessee shall proceed diligently with performance of this Ground Lease, pending final resolution of any request for relief, claim, appeal, or action arising under this Ground Lease.

24   **CONDITION OF SITE**

a.     The Lessee acknowledges that it has inspected the Site, knows its condition, and understands that, except as otherwise provided in the Ground Lease, Quitclaim Deed, and Bill of Sale and Assignment, the Site is leased "as is" to the Lessee, without any representation or warranty whatsoever and without obligation on the part of the Secretary (in its capacity as lessor under this Ground Lease) to make any alterations, repairs, or additions  or, except as otherwise agreed to in writing by the parties, to remediate any environmental conditions or discharges that exist or have occurred prior to the execution of this Ground Lease by the parties.  The Secretary shall not be liable for any latent or patent defects in the Site.

25.   **ENVIRONMENTAL PROTECTION**

a.     USE OF THE SITE: Use of the Site is restricted to a Residential Communities Initiative (RCI) project and ancillary facilities and requires any change to be in writing from the Government.

b.     REGULATORY OR ENVIRONMENTAL PERMITS:  The Lessee is to be solely responsible for obtaining at its own cost and expense any regulatory or environmental permits required for its operation under this Ground Lease, independent of any existing Installation permits.  The Lessee or any sublessee shall also be required to obtain their own United States Environmental Protection Agency (USEPA) Identification Number, if applicable.

c.     LESSEE COMPLIANCE:  Lessee is to comply with all lawful statutes, regulations, permits, or orders affecting Lessee's activity hereby authorized when such are issued by the USEPA; the North Carolina Department of Environment and Natural Resources; the North Carolina Department of Health and Human Services;

21

or any other Federal, State, interstate, or local governmental agency having jurisdiction to abate or prevent pollution. Lessee or any sublessee is prohibited from the disposal of any toxic or hazardous materials within the Project.

d.    INTERFERENCE WITH ON-GOING RESTORATION: Lessee shall not disrupt, inflict damage, obstruct, or impede on-going environmental restoration work on the Project or anywhere else on the Installation. Lessee shall indemnify the Government for any costs incurred as a result of the Lessee's breach of this provision.

e.    COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT (CERCLA) ACCESS CLAUSE: The Secretary and its officers, agents, employees, contractors, subcontractors, and State and Federal regulatory officials will have the right, upon reasonable notice to Lessee, to enter upon the Site in any case in which a response action or corrective action is found to be necessary, or is in progress on the Site, or such access is necessary to carry out a response action or corrective action on adjoining property in each case in accordance with all applicable laws, regulations, orders and other legally binding requirements and in a manner designed to minimize interference with lessee or any sublessee, including, without limitation, the following purposes:

        (1)    To conduct investigations and surveys (including, where necessary, drilling, and/or sample collection) and other activities related to Fort Bragg's Installation Restoration Program (IRP) and other environmentally related programs.

        (2)    To inspect field activities of the Secretary and its contractors and subcontractors with regards to implementing the Fort Bragg IRP and other environmentally related programs.

        (3)    To conduct any test or survey related to the implementation of the Fort Bragg IRP or other environmental compliance programs at the leased premises to collect or verify any data required by the USEPA or the State of North Carolina relating to the environmental condition of the site.

        (4)    To construct, operate, maintain, or undertake any other investigation, corrective measure, response, or remedial action as required or necessary under any Fort Bragg Federal Facilities Agreement (FFA), Record of Decision (ROD), Principle Coordination Point (PCP), or IRP requirement, including, but not limited to monitoring wells, pumping wells, and treatment facilities.

f.    COMPLIANCE DURING RESPONSE OR CORRECTIVE ACTION: The Secretary, its officers, agents, employees, contractors and subcontractors and Lessee will agree to comply with the provisions of the appropriate health or safety plan in effect during the course of any of the above-described actions. Any inspection, survey, investigation, or other corrective measure, response, or remedial

22

action will, to the extent practicable, be coordinated with representatives designated by Lessee or any sublessees. Lessee or sublessees shall have no claim, on account of such entries, against the United States or any officer, agent, employee, contractor, or subcontractor thereof, unless arising from the fault or negligence of the United States or any officer, agent, employee, or contractor. In addition, the Secretary, its officers, agents, employees, contractors, subcontractors and Lessee and any sublessees shall comply with all the applicable Federal, State, and local occupational safety and health regulations.

g.     ENVIRONMENTAL MANAGEMENT PLANS: Lessee shall submit to the Secretary, and maintain thereafter, an Environmental Management Plan which describes, in detail, the program for environmental management and method of compliance, by the user of any portion of the Project, with all Army, Federal, State, and local laws and regulations for the use, management, generation, storage, treatment, and disposal of all hazardous waste, hazardous materials, and hazardous substances. Each Environmental Management Plan or request for waiver of the requirement for a plan due to the non-hazardous nature of the proposed use, as applicable, for any portion of the Project, must be submitted and approved in writing by the Installation prior to occupancy or proposed use of the intended portion of the Project. Lessee will be responsible for the overall compliance of its operations. Lessee will be responsible for ensuring the preparation of all documents, records, and reports associated with the environmental compliance of its operation. No liability or responsibility shall attach to the Installation or the Secretary as a result of the Secretary's review and approval of an Environmental Management Plan under this paragraph.

h.     HAZARDOUS WASTE MANAGEMENT: Lessee will not store or dispose of hazardous materials on the leased premises unless authorized under 10 United States Code (U.S.C.) 2692, Storage, Treatment, and Disposal of Non-Defense Toxic and Hazardous Materials (Lessee's activities authorized by this Lease are deemed to be activities in connection with a service performed on Ft. Bragg for the benefit of the Department o Defense). Lessee shall strictly comply with the hazardous waste management requirements under the Resource Conservation and Recovery Act (RCRA) and the State of North Carolina hazardous waste management rules including proper hazardous waste characterization, labeling, storage, disposal, and documentation requirements. Except as specifically authorized by the Secretary in writing, Lessee must provide, at its own expense, such hazardous waste management facilities as needed to maintain compliance with all laws and regulations. Army hazardous waste management facilities will not be available to Lessee.

i.     EXISTING HAZARDOUS WASTE: Lessee will not use the Installation's hazardous waste accumulation points. Neither will Lessee permit its hazardous wastes to be commingled with the Installation's hazardous waste.

23

j.     LESSEE RESPONSE PLAN: The Lessee shall submit to the Secretary, and maintain thereafter, a plan for responding to hazardous waste, fuel, and other chemical spills prior to commencement of operations on the Project. Such plan shall be independent of the Installation's Spill Contingency Plan but may rely upon the Installation for initial fire response and/or spill containment. The plan may rely on the use of Installation personnel or equipment but only to the extent that these services are to be acquired from the Installation under a Municipal Services Agreement. Should the Army provide any personnel or equipment outside of that provided under a Municipal Services Agreement, whether for initial fire response and/or spill containment, or otherwise on request of Lessee, or because Lessee was not, in the opinion of the said officer, conducting timely clean-up actions, Lessee agrees to reimburse the Army for its actual response costs.

k.     ALTERATIONS, ADDITIONS, AND IMPROVEMENTS TO THE PROJECT: Lessee shall not construct, make, or permit any alterations, additions, or improvements to the Project in any way which may adversely affect Fort Bragg's investigations, restoration, or human health or the environment without prior written consent of the Secretary. Such consent may include a requirement to provide the Secretary with a performance and payment bond to it in all respects and other requirements deemed necessary to protect the interests of the Army.

l.     GROUNDWATER RESTRICTION:

   (1)     Restrictions and Conditions:

Lessee covenants for itself, its successors, and assigns not to access or use groundwater underlying the property for any purpose, except as agreed to in writing by the Secretary. For the purpose of this restriction, "groundwater" shall have the same meaning as in Section 101(12) of CERCLA. The written request will clearly reference the Ground Lease's Environmental Protection provisions, including a copy of the provisions as an attachment to the request, and providing information as to the depth of wells, the identity of the aquifer that will be withdrawn from, and the purpose of the withdrawals. Before replying to the request, the Secretary will review the IRP to determine whether institutional control limitations exist or if restrictions may be lifted to grant the request. This may involve consultation with the North Carolina Department of Environment and Natural Resources. Lessee, for itself, its successors or assigns covenants that it will not undertake nor allow any activity on or use of the property that would violate the restrictions contained herein. These restrictions and covenants are binding on Lessee, its successors and assigns; shall run with the land; and are forever enforceable.

   (2)     Enforcement:

The restrictions and conditions stated above benefit the public in general and the territory surrounding the property, including lands retained by the Secretary, and, therefore, are enforceable by the United States Government. Lessee covenants for itself, its successors, and assigns that it shall include and otherwise make legally

24

DACA65-1-03-16

binding, the restrictions above in all subsequent lease, transfer, or conveyance documents relating to the Project.

(3)    Secretary Access:

The Secretary and its representatives shall, for all time, have reasonable access to the Project for the purpose of installing and/or removing groundwater monitoring wells, and to perform continued monitoring of groundwater conditions, allowing chemical and/or physical testing of wells to evaluate water quality and/or aquifer characteristics. The Lessee shall allow reasonable ingress and egress of all equipment necessary to accomplish the same.

m.    NOTICE OF THE PRESENCE OF UXO AND COVENANT: A review of available records and information indicated the presence of unexploded ordnance (UXO) in the Cherbourg area. During World War II, there was an ammunition and magazine storage area where Cherbourg is presently located. This area has been identified as a solid waste management unit (SWMU 104); however, remedial actions have not been initiated. In the event that Lessee, its successors and assigns, should discover any ordnance, Lessee shall not attempt to remove or destroy it, but shall immediately notify the Fort Bragg Police Department. The Installation's designated explosives ordnance personnel will be dispatched promptly to dispose of such ordnance at no expense to Lessee.

n.    NOTICE OF THE PRESENCE OF ENDANGERED SPECIES AND COVENANT:

(1)    The Red-cockaded woodpecker and the Saint Francis Satyr butterfly are listed as endangered by the U.S. Fish and Wildlife Service (USFWS) and are afforded Federal protection under the Endangered Species Act (ESA) of 1973, as amended. Section 7 of the ESA states that each Federal agency shall, in consultation with the Secretary, insure that any action they authorize, fund, or carry out is not likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of designated critical habitat. Lessee will be cognizant of its and the Secretary's obligation to protect all endangered species, and Lessee will conduct its operations in a manner that will avoid a violation of any applicable provision of the ESA.

(2)    Lessee will limit the potential for a taking of the Red-cockaded woodpecker on the property by ensuring that its construction activities in the Northern Training Area site are consistent with the Biological Assessment of December 4, 2002, which was accepted by the USFWS in their letter of January 31, 2003. Failure to follow these measures could subject the violator to criminal sanctions of the ESA.

## 26.   ENVIRONMENTAL BASELINE SURVEY (EBS)

An EBS documenting the known history of the Project with regard to the storage, release or disposal of hazardous substances, is attached as Exhibit F (the "EBS"). The Secretary acknowledges that other environmental reports were prepared in order to obtain financing.  Upon expiration, revocation or termination of this Ground Lease, the Lessee shall, at its sole expense, conduct studies and prepare a document that is reasonably satisfactory to the Secretary describing the environmental condition of the Site at the time of expiration, revocation, or termination.

## 27.   HISTORIC PRESERVATION AND ARCHAEOLOGICAL SITES

a.      The Lessee shall not knowingly remove or disturb, or cause or permit to be removed or disturbed, any historical, archaeological, architectural or other cultural artifacts, relics, remains or objects of antiquity.  In the event such items are discovered on the Project, the Lessee shall immediately notify the Fort Bragg Cultural Resources Program Manager and protect the site and the material from further disturbance until the Installation Commander or his designee gives clearance to proceed.

b.      There is in effect a Programmatic Agreement, attached at Exhibit G, which is incorporated into and made a part of this Ground Lease.  The portion of the Project described in Attachment A of the Programmatic Agreement is within the Installation's Old Post Historic District (hereinafter, the District), a property determined to be eligible for inclusion in the National Register of Historic Places in accordance with the National Historic Preservation Act, as amended (16 U.S.C. 470f) and its implementing regulations (36 CFR part 800) (collectively, the "Historic Preservation Act").  Notwithstanding anything to the contrary in this Ground Lease, Lessee's use maintenance and management of properties within the District and new construction that may affect the District or other historic properties or archaeological sites shall at all times be subject to the Programmatic Agreement attached as Exhibit G.  The Lessee shall at all times ensure that its operations satisfy all of the Secretary's obligations under the March 14, 2003 Programmatic Agreement with North Carolina State Historic Preservation Officer (SHPO) and the Advisory Council on Historic Preservation (ACHP).

## 28.   SOIL AND WATER CONSERVATION

The Lessee shall maintain, in a manner reasonably satisfactory to the Secretary, all soil and water conservation structures that may be in existence on the Project at the beginning of, or that may be constructed by the Lessee during the term of, this Ground Lease.  The Lessee shall take appropriate measures, at its sole expense, to prevent, control, or correct soil erosion caused by Lessee activities within the installation.

29. **TAXES**

a.     Any and all taxes imposed by the State of North Carolina or any political subdivision on the Site, or interest of the Lessee, shall be promptly paid by Lessee. The Lessee shall not be liable to pay any taxes, assessments or similar charges which, at any time during the term of this Ground Lease, may be imposed on the Secretary's interest in the Project (if any).

b.     Each party shall have the right to contest any such taxes, assessments or similar charges and that upon Lessee's request, the Secretary shall reasonably cooperate with Lessee in Lessee's taking such actions as may be necessary and appropriate, in accordance with all applicable laws, to minimize or assert any exemption which may be available with respect to taxes, assessments and other charges imposed on the Project.

c.     Any depreciation or tax credits with respect to the Improvements, the Project, or any part thereof, will be available to the Lessee.  The Secretary will fully cooperate with the Lessee, to the extent necessitated by applicable law, in any effort by the Lessee to avail itself of any depreciation or tax credits properly taken in accordance with applicable laws and Treasury Regulations.

d.     Nothing in this Condition 29 shall preclude or be interpreted as overriding any separate agreement with the State or any political subdivision providing for an adjustment in Lessee's state or local tax obligations.

30. **COVENANT AGAINST CONTINGENT FEES**

The Lessee warrants that no person or selling agency has been employed or retained to solicit or secure this Ground Lease upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or established commercial or selling agencies retained by the Lessee for the purpose of securing business.  For breach or violation of this warranty, the Secretary shall have the right to require the Lessee to pay, in addition to the consideration stated herein, the full amount of such commission, percentage, brokerage, or contingent fee.

31. **MODIFICATIONS**

a.     This Ground Lease contains the entire agreement between the Secretary and the Lessee, and no modification, waiver or consent of this Ground Lease shall be valid unless in writing and signed by the Parties to be bound or by an authorized representative.  This provision shall apply to all Conditions of this Ground Lease and, without limitation, the effectiveness of any modification shall be subject to compliance with Condition 10 hereof.

b.     The provisions of this Ground Lease may only be superseded or repealed pursuant to an amendment to this Ground Lease.  In the event of a conflict between the specific provisions of this Ground Lease and a future amendment to any other

27

Project agreement that is not expressly recognized or confirmed by a modification to this Ground Lease, the specific provisions of this Ground Lease shall control.

c.      The Lessee's reasonable reliance on a conflicting amendment to any other Project agreement shall not be a Default of this Ground Lease.

## 32.    QUIET ENJOYMENT

Lessee and  the Lessee Parties shall have quiet enjoyment of the Project during the term of this Ground Lease without hindrance or molestation by the Secretary or anyone claiming by, or through the Secretary subject to the covenants, agreements, terms, provisions and conditions of this Ground Lease.

## 33.    DISCLAIMER

The Secretary as lessor assumes no enforcement or supervisory responsibility except with respect to matters committed to its jurisdiction and authority.  The Lessee shall obtain any permit or license at its sole expense that may be required by federal, state, or local statute in connection with the use of the Project.  This Ground Lease does not eliminate the necessity of obtaining any Department of the Army permit that may be required pursuant to the provisions of Section 404 of the Clean Water Act (33 U.S.C. 1344) and Section 10 of the Rivers and Harbors Act of 3 March 1899 (33 U.S.C. 403), as applicable.

## 34.    ANTI-DEFICIENCY ACT

Nothing in this Ground Lease shall obligate the Secretary to obligate appropriated funds in violation of the Anti-Deficiency Act 31 U.S.C. §§ 1341-1351.

## 35.    ADDITIONAL CONVENANTS AND CONDITIONS

a.      A memorandum of this Ground Lease shall be executed and acknowledged by the Secretary and the Lessee concurrently herein.  Lessee may record such documents in the real property records of Harnett County and Cumberland County, North Carolina.

b.      Lessee and the Secretary shall each provide an estoppel as to the status of this Ground Lease upon request (and in the form reasonably requested) by the other party or Mortgagee.  No estoppel by the Secretary shall excuse any undiscovered violation of the conditions of this lease.

28

c.    Each party represents to the other that this Ground Lease is enforceable against it in accordance with its terms and conditions, and each party covenants to deliver a legal opinion to the other and the initial Mortgagee upon or immediately subsequent to the lease Effective Date as to such enforceability.

## 36.    EXHIBITS

Exhibits A-G are incorporated and made a part of this Ground Lease.

**IN WITNESS WHEREOF**, the undersigned authorized agents of the parties have duly executed this Ground Lease this _____22nd_____ day of _____July_____, 2003.

THE UNITED STATES OF AMERICA, by
THE SECRETARY OF THE ARMY

By: _____
Name: JOSEPH W. WHITAKER
Title:    Deputy Assistant Secretary of the
         Army (I&H), OASA (I&E)

WITNESS:

TYPED NAME  S. JANICE HOWELL
title           Attorney-Advisor (Real Property)

29

COMMONWEALTH OF VIRGINIA )
                             ) ss.
COUNTY OF ARLINGTON     )

    I, the undersigned, a Notary Public in and for the Commonwealth of Virginia, County of Arlington, whose commission as such expires on the _30th_ day of _November_, 200_6_, do hereby certify that on this day personally appeared before me in the Commonwealth of Virginia, County of Arlington, Joseph W. Whitaker, Deputy Assistant Secretary of the Army (Installations and Housing) OASA (I&E), whose name is signed to the foregoing instrument and acknowledged the foregoing instrument to be his free act and deed, dated the _22nd_ day of _July_, 2003, and acknowledged the same for and on behalf of the UNITED STATES OF AMERICA.

    GIVEN UNDER MY HAND AND SEAL this _22nd_ day of _July_, 2003.

                            Karen A. Cooper
                            Notary Public

30

BRAGG COMMUNITIES, LLC

By: Bragg-Picerne Partners, LLC,
its Managing Member

Signed: _____

Name:     JOHN PICERNE

Title:      President

STATE OF _District of Columbia_
                                    ) SS.:
~~COUNTY OF~~ _____ )

On the _24th_ day of _July_ 2003, before me, _Christine Chase-Carpino_ _____, the undersigned Notary
Public, personally appeared John Picerne, personally known to me to be the person whose names is
subscribed to the foregoing Lease, and personally known to me to be the President of Bragg-Picerne
Partners, LLC the Managing Member of Bragg Communities, LLC, and acknowledged that the same was
the act and deed of Bragg Communities LLC and that he executed the same as the act of Bragg-Picerne
Partners, LLC.

_____
Notary Public Christine Chase-Carpino
                Notary Public, District of Columbia
My commission expires:        My Commission Expires 07-14-2006

WITNESS:

_____
JILL CORK

Exhibit E

## PROJECT MANAGEMENT PROCEDURES AND PROTOCOLS

Lessee will ensure professional management and maintenance of these neighborhoods consistent with the standards of a market rate residential rental development in the Fayetteville area. The Community Development and Management Plan (CDMP) is an overall plan to guide initial development activity.

Lessee will operate an On-Site Management Office. The staff of this office will be capable of performing management and operations duties as well as maintenance functions necessary to satisfy residents' housing needs. When the On-Site Office is not open, Lessee will provide on-call staff, to include emergency maintenance personnel, to meet residents' immediate needs.

Lessee will oversee the overall maintenance and repair of the housing stock, pest control, and the maintenance of the lawns and landscaping.

Lessee will maintain a quality control program. The quality control program will include regular inspections of vendor work projects (including an annual, scheduled inspection), resident surveys (including an annual survey), and other mechanisms for residents to provide timely feedback regarding their housing.

All family housing assets including DUs, garages, carports, storage sheds, grounds, and other facilities, are to be maintained to a standard that prevents deterioration beyond that which results from fair wear and tear, and which corrects deficiencies in a timely manner to ensure the full life expectancy of the facilities and their components. The level of maintenance shall ensure that all family housing facilities are free of missing components or defects which would affect the safety, appearance, or habitability of the facilities or would prevent any electrical, mechanical, plumbing, or structural system from functioning in accordance with its design. The quality of the work and the repaired areas shall be compatible with adjacent areas. Replacements shall match existing components in dimensions, materials, quality, finish, color, and design where possible.

During the performance of the work, debris, excess material, and parts will be cleaned up and removed at the end of each workday and at the completion of the job. Upon completion of work any fingerprints, stains, or other unsightly marks will be removed. Wherever the term "pleasing appearance" appears in subsequent paragraphs, shall be construed to mean an appearance similar to the original finished appearance.